UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-185-GWU

YVONNE MARTHA MOSES BRYANT,                                    PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                               DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

11-185  Yvonne Martha Moses Bryant

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

        Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-185 Yvonne Martha Moses Bryant

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

3

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Yvonne Martha Moses Bryant, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of pancreatitis and hepatitis C. (Tr. 77). Nevertheless, based on interrogatories submitted to a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 77-81). The Appeals Council declined to review, and this action followed.

The interrogatories submitted by the ALJ asked the VE whether a person of the plaintiff's age of 44, high school education, and work experience as a cashier and licensed practical nurse could perform any jobs if she could perform a full range

11-185  Yvonne Martha Moses Bryant

of work at all exertional levels, but was restricted non-exertionally to performing simple, repetitive non-detailed tasks where coworkers and public contact were casual and infrequent, where supervision was direct and non-confrontational, and where changes in the work place were infrequent and gradually introduced.  (Tr. 182-83).  The VE responded that such a person could perform the unskilled "medium" level jobs of hand packager, kitchen helper, and industrial cleaner and proceeded to provide the number of such jobs existing in the state of Tennessee and in the national economy.  (Tr. 184).[1]

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there is an error of law.  Blakley v. Commissioner of Social Security, 581 F.3d 399, 405 (6th Cir. 2009).  There is an additional issue in that the plaintiff's Date Last Insured (DLI) was December 31, 2008 (Tr. 75), meaning that she was required to show disability existing prior to that date in order to be entitled to DIB.  Her SSI application is not affected.

The plaintiff filed her current applications in January, 2008, alleging disability since April 1, 2006 due to hepatitis C, acute pancreatitis, and anxiety.  (Tr. 102-12, 137).  She had previously been found disabled as of July 16, 1995 due to a mood disorder, but her condition was found to have improved and her disability ceased

---

[1]Although the plaintiff is a resident of Kentucky, not Tennessee, the ALJ identified well over 600,000 such jobs existing at the national level, clearly a significant number. Therefore, the VE's citation of jobs in the wrong state is a harmless error.

11-185  Yvonne Martha Moses Bryant

as of April 1, 2006.  (Tr. 57).  An ALJ upheld the cessation of benefits in a decision

dated December 14, 2007.  (Tr. 52-66).  The current ALJ applied res judicata to the

prior decision, and noting that no new or material evidence had been submitted for

the period from April 1, 2006 to December 14, 2007, concluded that the prior

decision was administratively final and binding.  (Tr. 74).  Therefore, the earliest

date that the plaintiff could be found disabled was December 15, 2007.  (Id.).[2]

The plaintiff testified that she could not work because she had hepatitis C,

which left her weak, fatigued, and in constant pain under the right rib cage.  (Tr. 35-

37).  She also had polyps removed in a recent procedure, and the medication she

was on made her feel drowsy.  (Tr. 26).  However, she also stated that her only

medication was a blood pressure pill.  (Tr. 39).  She testified to having a long-time

diagnosis of bipolar disorder, adding that she had almost killed a woman over a

pack of cigarettes because her distress level was so high.  (Tr. 21, 34).  She did not

have any mental health treatment since 2001.  (Tr. 33).

Medical records from the relevant period are limited.  Historically, a

procedure was performed in June, 2006 to place a stent in her common bile duct.

(Tr. 209-10).  Afterwards, she reported feeling much better.  (Tr. 225).

---

[2]The plaintiff, who has appealed the case to this court pro se, makes a reference
in her motion for summary judgment to another unfavorable ALJ decision from 2011 and
attaches SSI and DIB applications from October, 2009.  This application is not part of the
court's current review, however.

11-185  Yvonne Martha Moses Bryant

The plaintiff's family physician, Dr. Patrick F. Jenkins, reported on September 24, 2007 that her medical problems included hepatitis C, which was currently inactive, and being post gall bladder surgery with recurrent pancreatitis, status post a stent placement, status post a hysterectomy and status post an appendectomy. (Tr. 295).  Her main concern at the time was swelling in the lower extremities, for which he prescribed a diuretic. (Id.).  At follow-up examinations in December, 2007 and January, 2008, he found her physical examinations to be unremarkable.  (Tr. 293-94).  He reported that she was preparing to go to work at a Cracker Barrel restaurant and opined that her condition was "acceptable for that." (Tr. 293).  He did prescribe Naprosyn for arthritic pain along with Metamucil.  (Id.).  While the plaintiff denied at the hearing that she ever planned to work at Cracker Barrel (Tr. 31), the key point is that Dr. Jenkins was a treating source who felt that she was capable of going to work.

Dr. W. R. Stauffer conducted a consultative physical examination on December 19, 2008 and noted some significant tenderness in the right upper quadrant and a slight limitation of forward flexion to 70 degrees, but otherwise he found no abnormalities other than obesity. (Tr. 362-63).  He opined that she could occasionally lift 50 pounds and frequently lift 25 pounds, and might have some

difficulty with climbing ladders, ropes, and scaffolds, but would have no other limitations. (Tr. 363-64).[3]

The only other evidence from a medical professional regarding physical restrictions came from Dr. James Ramsey, a non-examining state agency reviewer, who concluded that the plaintiff could perform medium level lifting with no other restrictions. (Tr. 341-47).

Accordingly, there is substantial evidence to support the ALJ's finding that the plaintiff could perform a full range of medium level exertion.

From a psychological standpoint, the plaintiff admitted that she was not being treated for anxiety or any other mental health condition, as previously noted. (Tr. 33). State agency psychologists early in 2008 concluded there was no evidence of a "severe" mental impairment. (Tr. 304, 326).

The ALJ referred the plaintiff to Psychologist Timothy L. Baggs for a mental status examination in January, 2009. She complained to Mr. Baggs only of physical problems, and stated that they were the reason she was unable to return to work. (Tr. 375-76). She stated that she had a good relationship with a friend whom she lived with and a great relationship with her children and did not feel that she had any psychological problems other than periodic feelings of sadness. (Tr. 378). She

---

[3]In a medical source statement appended to his report, Dr. Stauffer indicated that the plaintiff would be limited to standing and walking one hour at a time without interruption. (Tr. 366). He did not describe a specific reason for these limitations, and the plaintiff has not raised any issue concerning these restrictions on appeal.

11-185  Yvonne Martha Moses Bryant

stated that she had a remote history of a psychiatric hospitalization in 1996 or 1997 due to depression and had been in outpatient treatment until 2001 but had nothing since then.  (Tr. 379).  She reported that she could do household activities at a slow pace, take care of her personal needs and finances and had got along "great" with coworkers and supervisors in the past.  (Tr. 381).  Mr. Baggs concluded that the plaintiff was not experiencing anxiety warranting a clinical diagnosis and had essentially no limitations.  (Tr. 383-85).

The ALJ gave the plaintiff the benefit of the doubt, however, and limited her, as described above, to simple, repetitive, and non-detailed tasks with infrequent contact with coworkers and non-confrontational supervision in a work place where changes were infrequent and gradually introduced.  (Tr. 80).  There is no evidence of any greater restriction.

The administrative decision is supported by substantial evidence, and will be affirmed.

This the 4th day of May, 2012.

Signed By:

*G. Wix Unthank*

United States Senior Judge